**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**PRESTON HARRIS**                                                                                          **PLAINTIFF**

**V.                             CASE NO.: 2:10CV00160 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Preston Harris appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security income ("SSI") under Title XVI of the Act. Because substantial evidence supports the Commissioner's decision, it must be AFFIRMED.

**I.      Background:**

On March 13, 2006, Mr. Harris protectively filed for DIB and SSI benefits claiming disability since January, 2004, due to eczema; vision, back, neck, and nerve problems; and borderline intellectual functioning. (Tr. 36-39, 52). He met the status requirements of the Act through September 30, 2011. (Tr. 12, 159) Mr. Harris's claims were denied initially and upon reconsideration. (Tr. 36-39) At Mr. Harris's request, an Administrative Law Judge ("ALJ")[1] held a hearing on February 24, 2010, at which he

---

[1] The Honorable W. Thomas Bundy.

appeared, with his lawyer, and testified. (Tr. 23-35) The ALJ also heard testimony from a vocational expert ("VE"). (Tr. 27-29, 33-34)

The ALJ issued a decision on April 22, 2010, finding that Mr. Harris was not disabled under the Act. (Tr. 10-18) On August 27, 2010, the Appeals Council denied Mr. Harris's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Harris was thirty-nine years old at the time of the hearing. (Tr. 10, 16) He had an eighth-grade education and was able to communicate in English. (Tr. 139, 146) He had past work as a factory worker. (Tr. 16, 27) At the time of the hearing, he lived with his wife and two children. (Tr. 29)

## II.  Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g); 416.920(a)-(g).

The ALJ found that Mr. Harris had not engaged in substantial gainful activity since December 24, 2006. (Tr. 12) He found that Mr. Harris had the following severe impairments: borderline intellectual functioning, non-specified mood disorder, and non-specified anxiety disorder. (Tr. 12) The ALJ found Mr. Harris did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 13)

The ALJ determined that Mr. Harris had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "the claimant is able to perform work where interpersonal contact is incidental to work performed (for example assembly work); where complexity of tasks is learned and performed by rote using little judgment and with few variables; and supervision required is simple, direct, and concrete." (Tr. 13) He found that Mr. Harris could not perform his past relevant work, but relying on the testimony of the VE, he found that Mr. Harris had the residual functional capacity to perform jobs that existed in significant numbers in the national economy. (Tr. 17)

### III. Analysis:

#### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Johnson v.*

*Astrue*, 627 F.3d 316, 319 (8th Cir. 2010); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)).

To review the record as a whole, the Court considers both evidence that detracts from the Commissioner's decision and evidence that supports the decision. But the Commissioner's decision cannot be reversed just because some evidence supports a different outcome. *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

B.   *Residual Functional Capacity*

Mr. Harris claims the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence. (#13 at pp. 9-10) His RFC is what Mr. Harris can do despite his limitations. 20 C.F.R. § 404.1545. The ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). RFC is a medical question, and at least some medical evidence must support an RFC determination. *Id*. The ALJ must determine the RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a plaintiff's own descriptions of his limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Mr. Harris first claims the ALJ erred by finding him restricted only in carrying out complex job instructions. This is not the case. Here, the ALJ found that Mr. Harris is

limited to work where interpersonal contact is incidental to work performed, where the complexity of tasks is learned and performed by rote with little judgment and few variables, and where required supervision is simple, direct, and concrete.  (Tr. 13-16)

Mr. Harris also claims that the ALJ erred by relying only on an incomplete assessment of state agency physicians and substituting his own opinions for those of Mr. Harris's treating physician when determining that he retained the RFC for unskilled work. This also is not the case.

Here, the ALJ considered the report from Mr. Harris's consultative examination by Charles M. Spellmann, Ph.D., on October 20, 2008.  Dr. Spellmann reported that Mr. Harris had a positive attitude; cooperated and followed directions; and concentrated and persisted appropriately.  (Tr. 293)  Mr. Harris reported to Dr. Spellmann that he was willing to work, was looking for a job but just could not find one.  (Tr. 294)  Dr. Spellmann administered the WAIS-III intelligence test to Mr. Harris and his full scale IQ was 72.  Dr. Spellmann concluded the Mr. Harris had borderline intellectual function, was able to manage his funds without assistance, and was "slow and if placed in an appropriate job, which he can handle with assistance and supervision and support, then he would be able to do all right."  (Tr. 294)

The ALJ also considered the records of Mr. Harris's treating physicians and noted that Alison Baker, M.D., examined Mr. Harris on August 29, 2008, at Counseling Services of Eastern Arkansas ("Counseling Services") and diagnosed non-specified mood disorder and non-specified anxiety disorder.  (Tr. 15, 316)  She assigned Mr. Harris a

Global Assessment of Function ("GAF") score of 40 and prescribed Seroquel XR. (Tr. 316) Notes from Dr. Baker's examination of Mr. Harris in September, 2008, indicate that Mr. Baker noticed improvement after starting on medication, but felt he needed to increase the dosage because he was agitated and frustrated in the evenings. (Tr. 317) Upon examination, he had appropriate affect and logical, sequential, goal-directed thoughts; was alert and oriented; had intact memory; and fair judgment and insight. (Tr. 317) She assigned a GAF score of 50 and increased his medication dosage. (Tr. 317)

The ALJ also noted that, on January 23, 2009, Michael Seay, M.D., examined Mr. Harris at Counseling Services and diagnosed non-specified mood disorder and non-specified anxiety disorder. (Tr. 384) The ALJ noted that Dr. Seay assigned a GAF score of 42. In his report, Dr. Seay wrote that Mr. Harris reported he had stopped taking one of his medications, Trazedone, and had tried to discontinue his Tegretol, but became angrier and moodier. (Tr. 384) He denied hallucinations or suicidal or homicidal ideas or intent. (Tr. 384) Dr. Seay recorded that Mr. Harris was focused on being prescribed Xanax or Valium. Dr. Seay prescribed Tegretol and gave him a trial of Vistaril. (Tr. 384) Mr. Harris did not keep a February, 2009 appointment at Counseling Services.

Mr. Harris was discharged from treatment at Counseling Services in June, 2009, but was readmitted on July 10, 2009. He met with a counselor on July 17, 2009, and called the clinic on October 15, 2009. He was again discharged from Counseling Services on January 11, 2010. (Tr. 404-11)

Finally, the ALJ considered the opinions of the state agency physicians. (Tr. 16) State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record. 20 C.F.R. § 416.927(f); SSR 96-6p. Here, Kay M. Gale, M.D., and Winston Brown, M.D., assessed Mr. Harris's RFC. In making her November, 24, 2008 assessment, Dr. Gale reviewed the Counseling Services records and the consulting report of Dr. Spellmann. She assessed Mr. Harris as moderately restricted in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace with no episodes of decompensation. (Tr. 339) She found that Mr. Harris had the residual functional capacity to perform work "where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, with few variables, uses little judgment; supervision required is simple, direct and concrete." (Tr. 343-46) On January 29, 2009, Dr. Brown reviewed Mr. Harris's case, noting that the medical records showed little change in his status. He affirmed Dr. Gale's initial rating. (Tr. 356)

Mr. Harris contends that the ALJ erred by relying on the "incomplete assessment" of the state agency physicians. Mr. Harris is correct that all of the medical records were not available to the state agency physicians when they made their assessments. However, the record indicates that Dr. Gale reviewed Dr. Spellmann's report as well as the Counseling Services records from August and September of 2008, and Dr. Brown reviewed the Counseling Services records from August and September of 2008 as well as records from October, 2008. As set forth above, the only records that were not available

to these physicians were Dr. Seay's report from his examination of Mr. Harris on January 23, 2009, his discharge records from in June, 2009, his readmission record from July 10, 2009, a counselor's record from a meeting with Plaintiff on July 17, 2009, records from Mr. Harris's call to Counseling Services on October 15, 2009, and his discharge record from Counseling Services dated January 11, 2010. (Tr. 403-13)  These records do not undermine the functional capacity assessments of the state agency physicians.

The ALJ considered all of the evidence in the record, including the records of Mr. Harris's treating physicians, who diagnosed Mr. Harris with mental impairments and prescribed medications. Mr. Harris has not cited any evidence indicating he has additional limitations because of his impairments. Instead, the record suggests that Mr. Harris worked for many years with the diagnosed mental impairments and while on medication for those impairments. (Tr. 27, 155, 174-77, 263-70) An ability to work with an impairment supports the ALJ's conclusion that Mr. Harris's mental impairments were not disabling. See *Harris v.Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004)(considering claimant's part-time work during the relevant period as evidence contradicting her alleged disabling impairment).

Additionally, Mr. Harris sought employment while his disability claim was pending and acknowledged at the hearing that he would return to work if given the opportunity. (Tr. 27, 155, 294) See 20 C.F.R. § 416.966(c)(a claimant will not be considered disabled if he remains unemployed because of an inability to get work or a

lack of work in the local area). Substantial evidence supports the ALJ's conclusion that Mr. Harris had the residual functional capacity to perform unskilled work.

C. *ALJ Bias*

In his brief, Mr. Harris claims the ALJ was biased. As support for this claim, he states the ALJ has a "documented history of hearing unusually high numbers of disability claims each year, while paying less than twenty percent of the cases he hears."[3] (#13 at p. 13)

ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Kittler v. Astrue*, No. 06-2225, 2007 WL 1390639, at *1 (8th Cir. May 14, 2007)(unpublished)(affirming ALJ's disability determination where claimant failed to provide evidence of bias). To rebut this presumption, a claimant must demonstrate "conflict of interest or some other specific reason for disqualification." *Schweiker*, 456 U.S. at 195.

Mr. Harris does not provide any evidence from which this Court could conclude that the ALJ had a conflict of interest in this case or that there was reason to disqualify this ALJ from this case. The ALJ's case statistics do not support an allegation of a conflict of interest with Mr. Harris. Mr. Harris and his attorney were aware of the identity of the ALJ prior to the hearing, but did not object to the ALJ or seek his recusal prior to

---

[3] The Court notes the Commissioner's objection to the 20% favorable rate claimed by Mr. Harris in his brief and his contention that statistics show this ALJ's rate is 25%. (#14 at p. 12) Both rates are, however, irrelevant to a claim of ALJ bias in a particular case.

or during the hearing. Nor did Mr. Harris raise a claim of bias before the Appeals Council. *Weikert v. Sullivan*, 977 F.2d 1249, 1254 (8th Cir. 1992)(claimant's failure to raise ALJ bias at the agency level ordinarily prevents the claimant from raising it in judicial proceeding)(citations omitted). Accordingly, Mr. Harris's claim of bias is not supported by the record.

**IV.    Conclusion:**

There is sufficient evidence in the record as a whole to support the Commissioner's determination that Preston Harris was not disabled within the meaning of the Act. Accordingly, his appeal is DENIED, and the Clerk is directed to close the case, this 3rd day of October, 2011.

_____
UNITED STATES MAGISTRATE JUDGE